IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATELYN K.,[1]                                              Case No. 6:20-cv-00251-SB

               Plaintiff,                          **OPINION AND ORDER**

     v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[2]

               Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

      Katelyn K. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a U.S.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///

///

///

///

///

# BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in October 1986, making her twenty-nine years old on February 3, 2016, her alleged disability onset date.[3] (Tr. 23, 69, 82.) Plaintiff graduated from high school and has past relevant work experience as an appointment clerk. (Tr. 22, 58, 174.) In her DIB application, Plaintiff alleged disability due to postural orthostatic tachycardia syndrome ("POTS"), fibromyalgia, Ehlers-Danlos syndrome ("EDS"), and chronic migraines.[4] (Tr. 70, 83, 173.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on March 8, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on August 3, 2018. (Tr. 31-67.) On October 30, 2018, the ALJ issued a written decision denying Plaintiff's application. (Tr. 13-24.) On December 18, 2019, the Appeals

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2021 (*see* Tr. 13) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2021, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

[4] POTS is a syndrome "in which the patient's heart rate increases significantly upon standing without a significant drop in blood pressure," *Hibbard v. Sec'y of Health & Human Servs.*, 698 F.3d 1355, 1359 (Fed. Cir. 2012), and EDS is a "rare genetic condition typified by joint instability and chronic musculoskeletal pain." *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 926 (8th Cir. 2016).

Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 3, 2016, her amended alleged onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: POTS and migraines. (Tr. 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 17.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) Plaintiff can never climb ladders, ropes, or scaffolds; and (2) Plaintiff can have no more than "occasional exposure to workplace hazards," such as "unprotected heights and exposed, moving machinery." (*Id.*) At step four, the ALJ concluded that Plaintiff was not disabled because she could perform her past relevant work as an appointment clerk. (Tr. 22.) In the alternative, the ALJ proceeded to step five, where he found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a document preparer, addressor, and election clerk. (Tr. 24.)

DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (2) failing to provide legally sufficient reasons for discounting the opinion of Plaintiff's treating physician, Michael Feldman, M.D. ("Dr. Feldman"). As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings.

PAGE 5 – OPINION AND ORDER

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 18, the ALJ determined that Plaintiff's "medically determinable

PAGE 6 – OPINION AND ORDER

impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to meet that standard here.

The Commissioner argues that the ALJ provided two clear and convincing reasons for discounting Plaintiff's testimony. First, the Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony based on a lack of supporting medical evidence. (*See* Def.'s Br. at 3-6, summarizing portions of the medical record and arguing that the "ALJ noted that inconsistencies in the medical evidence undermined [Plaintiff's] allegations," the ALJ "reasonably relied on Plaintiff's questionable diagnosis of POTS in discounting her complaints," the ALJ "reasonably relied on Plaintiff's largely normal physical examinations and diagnostic findings in discounting her complaints," and the "Court should not subscribe to Plaintiff's alternative interpretation of the medical records").[5] Second, the Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony by pointing out that her "testimony about her activities [was] 'not fully consistent with the record.'" (Def.'s Br. at 6, quoting Tr. 18.)

It is well settled that an ALJ may discount a claimant's symptom testimony based on, among other things, a lack of supporting medical evidence. *See, e.g.*, *Wills v. Saul*, 829 F. App'x 838, 839 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and noting that the "ALJ reasonably relied on . . . the lack of supporting medical evidence to find [that the claimant's] symptom allegations were not

---

[5] When discussing Plaintiff's testimony, the ALJ focused largely on evidence that concerned one of Plaintiff's primary impairments, POTS. (*See* Tr. 18-20, addressing Plaintiff's testimony before transitioning to the "opinion evidence"; Tr. 34, referring to POTS as one of Plaintiff's two "leading diagnoses"). Importantly, however, the ALJ also stated that he was "giving [Plaintiff] credit" for suffering from POTS, even though she "may not even have POTS." (Tr. 18.)

entirely credible"). However, it is also well settled that in discounting a claimant's symptom testimony, an ALJ may not rely solely on a lack of supporting medical evidence. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))); *see also Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (holding that the ALJ "failed to provide clear and convincing reasons supported by substantial evidence to support her conclusion that [the claimant's] testimony was not entirely credible," and noting that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony" (citing *Burch*, 400 F.3d at 681)).

    With respect to Plaintiff's activities, the ALJ stated that Plaintiff provided "the following testimony that [was] not fully consistent with the record as discussed later in the decision," and in the same paragraph, which otherwise summarized Plaintiff's testimony, the ALJ included this reference to Plaintiff's activities: "Activities such as standing too long, playing with her daughter or cleaning can bring on symptoms of lightheadedness, dizziness, rapid heart rate, nausea, tingling and weakness in legs." (Tr. 18.) In the same paragraph, the ALJ also discussed Plaintiff's testimony that she "needs help caring for her daughter at least five days per week for various amounts of time" and can occasionally drive. (*Id.*) The ALJ's decision does not refer specifically to Plaintiff's "activities" again until the concluding paragraph of the discussion in support of the RFC assessment. (*See* Tr. 22, concluding that Plaintiff's "activities of daily living" and other evidence supported the RFC for the "identified range of sedentary work").[6]

---

[6] As discussed below in footnote eight, in the portion of his decision addressing Dr. Feldman's opinion, the ALJ did state that Plaintiff's testimony about her limited childcare activities was not consistent with her testimony about her upper extremity limitations, which

The ALJ's discussion of Plaintiff's reported activities falls short of satisfying the Ninth Circuit's specificity requirement, and therefore does not amount to a clear and convincing reason for discounting Plaintiff's testimony. Ninth Circuit case law "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that general findings are insufficient, as the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and therefore refusing to rely on a finding that did not meet "our requirements of specificity") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But Ninth Circuit case law plainly requires that the ALJ identify "*which* testimony [he] found not credible, and . . . explain[] *which* evidence contradicted that testimony," not just "offer[] non-specific conclusions that [the claimant's] testimony [is] inconsistent with her medical treatment [evidence]." *Id.* (simplified); *see also id.* at 1278 ("The district court's efforts to shore up the ALJ's decision, while understandable, are unavailing. Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and we are constrained to review the reasons the ALJ asserts.") (simplified).

The ALJ here summarized Plaintiff's testimony and did not explain which evidence undermined the testimony. Accordingly, the ALJ improperly discounted Plaintiff's testimony

---

Plaintiff offered in support of, and in response to the ALJ's questions about, Dr. Feldman's opinion. (*See* Tr. 56, setting forth Plaintiff and the ALJ's discussion about Dr. Feldman's opinion). As the Court explains in footnote eight, the record does not support this conclusion.

based on her activities. *See Lambert*, 980 F.3d at 1278 ("Although the ALJ did provide a relatively detailed overview of [the claimant's] medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible.'" (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015))).

Given that the ALJ erred in discounting Plaintiff's testimony based on her activities, the Court concludes that the ALJ committed harmful error in discounting Plaintiff's testimony, because a lack of supporting medical evidence cannot be the sole reason for doing so. *See Valdez*, 746 F. App'x at 677 (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"); *Taylor*, 720 F. App'x at 907 ("[A] lack of objective medical evidence cannot be the sole reason to discredit claimant testimony[.]"). "Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made, including . . . weighing [Plaintiff's improperly discounted symptom] testimony with the other evidence." *Id.* (citing *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017))).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law[7]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc.*

---

[7] The new regulations that govern how ALJs must evaluate medical opinion evidence do not apply here because Plaintiff filed her application before March 27, 2017. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations that apply to Social Security applications filed on or after March 27, 2017).

*Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence [in the record].'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

B.      Analysis

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting the opinion of her treating physician, Dr. Feldman. (*See* Pl.'s Opening Br. at 9, arguing that the ALJ failed to provide clear and convincing or specific and legitimate reasons for discounting Dr. Feldman's opinion, but the "standard should be clear and convincing" reasons). As explained below, the ALJ did not commit harmful error in discounting Dr. Feldman's opinion.

### 1.    Standard of Review

Dr. Feldman's opinion regarding Plaintiff's POTS diagnosis conflicts with other opinion evidence in the record. (*Compare* Tr. 602, July 29, 2016, Dr. Feldman stated that Plaintiff was "looking better today [even] though [she was] still markedly disabled by her POTS," *with* Tr. 260, Feb. 3, 2016, a treating physician examined Plaintiff and stated that Plaintiff is "unlikely to meet full formal criteria for POTS," *and* Tr. 375, Feb. 15, 2016, a treating cardiologist stated that the etiology of Plaintiff's dizziness was "uncertain" and Plaintiff's "[h]eart rate excursions do not seem to be postural, suggesting that this is not POTS"). The ALJ was therefore required to provide specific and legitimate reasons for rejecting Dr. Feldman's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician[.]") (simplified); *Kilian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("[The claimant's] contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons.").

### 2.    Dr. Feldman's Opinion

Dr. Feldman stated the following in a "To Whom It May Concern" letter dated July 12, 2018:

> I have been treating [the claimant] for the past 2+ years for [POTS]. This accompanies her hypermobile-[type] [EDS] diagnosis. There are few if any options for physicians who provide longitudinal management of these disorders. I follow 300 patients with this disorder. [The claimant] has seen numerous physicians across many specialties including at the university without any traction or formal diagnosis. Since working with me, she has a firm diagnosis and is on appropriate therapy. I as[k] that you allow her to continue to follow [up] with me for ongoing care of her disorder.

(Tr. 688.)

Dr. Feldman also completed a treating medical source statement on July 27, 2018. (Tr. 703-07.) In his medical source statement, Dr. Feldman stated that he has treated Plaintiff since May 31, 2016; Plaintiff suffers from POTS and EDS; Plaintiff's diagnoses are "usually long term problems that are managed not cured"; Plaintiff's signs include orthostatic tachycardia, hypermobility, and flushing; Plaintiff's examinations and testing are "consistent" with her diagnoses; and Plaintiff needs "[f]requent breaks to lie down every hour" to manage her symptoms, including orthostatic lightheadedness, "crushing" fatigue, and headaches. (Tr. 703-04.) Dr. Feldman also stated that Plaintiff would need unscheduled breaks, and on a "[d]aily" basis, Plaintiff's medical problems would prevent her from maintaining a regular work schedule. (Tr. 706-07.)

### 3.      The ALJ's Treatment of Dr. Feldman's Opinion

The ALJ assigned "little weight" to Dr. Feldman's opinion, for several reasons:

> [In response to some questions on his medical source statement, Dr. Feldman] said to refer to [his] 'extensive charting,' but there was only about 20 pages from his clinic and those records did not support his opinion. Dr. Feldman opined [that the claimant] can use her hands/fingers for only 10% of an 8-hour day [and] could not reach at all . . . [but these opinions] are not supported by objective evidence and seem quite excessive and severe in light of the benign objective record. Treatment notes showed few, if any, complaints about upper extremities and there is no objective evidence related to her upper extremities, other than some hypermobility. However, there was no mention of upper extremity pain and [the claimant] endorsed much improved overall chronic pain symptoms. Even the claimant testified that on average she spends 1-2 hours alone with her child, which is not consistent with her testimony that she goes weeks and months without being able to reach or use her hands/fingers for more than 6 minutes per hour. Moreover, Dr. Feldman's notes are disjointed in that he states [that the claimant] is disabled or incapacitated by POTS but also describes her complaints as somatic and physical examinations were completely normal (see above detailed discussion of Dr. Feldman's treatment notes). Of note, gait was normal through the record, which discounts the finding of reduced standing/walking, and there were no complaints of sitting or notations that she had difficulty sitting at appointments.

(Tr. 21) (simplified).

The Court finds that the ALJ did not commit harmful error in discounting Dr. Feldman's opinion. Notably, although Plaintiff's testimony does not necessarily undermine Dr. Feldman's opinion regarding Plaintiff's extreme upper extremity limitations (i.e., Plaintiff can only use her hand and fingers ten percent of the time during an eight-hour workday and Plaintiff can reach with her arms zero percent of the time during an eight-hour workday, Tr. 706),[8] the Court agrees that the record, including the "extensive charting" that Dr. Feldman referred to in his medical source statement, does not appear to include any objective evidence that would support such excessive findings. *Cf. Klaus v. Astrue*, No. 2:11-cv-0086, 2012 WL 2921372, at *7 (E.D. Cal. July 17, 2012) ("The ALJ correctly noted that Dr. Kalman failed to provide any objective evidence to support his excessive findings (as noted above), which were also not supported by the other record evidence."); *see also Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) (holding that the ALJ satisfied the specific and legitimate reasons standard and noting that the ALJ discounted the physician's opinion because it was "excessive and inconsistent with the clinical findings in the record").

For example, on February 3, 2016, the alleged disability onset date and the day a hospital admitted Plaintiff based on her complaints of lightheadedness and tachycardia, Plaintiff exhibited

---

[8] The ALJ's reference to Plaintiff's childcare activities does not support the ALJ's finding that Plaintiff's testimony undermined Dr. Feldman's opinion regarding Plaintiff's ability to use her upper extremities. (*See* Tr. 36, "My parents and my husband have worked their schedules so . . . I always have a backup [when I am home with my daughter]."; Tr. 54-55, "How often are you actually alone with your daughter? A. It really varies. I mean, there are weeks where I'm not alone with her at all. . . . But on average, I would say for an hour or two a day, maybe. . . . But again, there's periods of time where I'm not alone [with her] at all."; Tr. 211, "[I] always have a backup [childcare] provider close by if I am alone with her."). The ALJ did not ask Plaintiff about the activities she engages in during the "hour or two a day, maybe," that she spends with her daughter while "always hav[ing] a backup" provider nearby, and there was nothing in Plaintiff's testimony about her childcare activities that undermined Dr. Feldman's opinion about her upper extremities. (*Cf.* Tr. 211, "My husband cares for [our daughter] primarily. I participate as I'm able with some diaper changes on the floor, sitting with her at mealtime, reading books and light play.").

full strength (i.e., "5/5") in her "major muscle groups" (Tr. 520-22), which includes her arms and shoulders. Similarly, on May 11, 2016, Plaintiff exhibited "full [range of motion] throughout [the] joints of [her] upper and lower extremities." (Tr. 386.) Furthermore, on August 16, 2016, when Plaintiff's physician referred her for a consultation based on "concerns of worsening joint pain and hypermobility," Plaintiff's exam revealed that her "[m]uscle strength [was] 5 out of 5 in all extremities" and there was "minimal tender points on [her] upper extremities." (Tr. 660-63.) It was reasonable for the ALJ to discount Dr. Feldman's opinion based on this record evidence.

Given the findings above, the Court concludes that the ALJ did not commit harmful error in discounting Dr. Feldman's opinion. *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an ALJ's errors are harmless if the ALJ "provided at least one valid reason" for discounting the evidence) (citation omitted); *Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL 3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so.").

## III.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits

PAGE 15 – OPINION AND ORDER

when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

B.    **Analysis**

The Court concludes that remand for further proceedings is appropriate here because the ALJ failed adequately to explain why he discounted Plaintiff's testimony, and outstanding issues in the record remain that the ALJ must resolve before a disability determination, including weighing Plaintiff's improperly discounted testimony with the other evidence. *See Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings."); *Taylor*, 720 F. App'x at 907 ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made, including . . . weighing [the claimant's improperly discounted] testimony with the other evidence.").

**CONCLUSION**

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and

REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 17th day of September, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 17 – OPINION AND ORDER